ERIC STEINBERG, ESQ. (ES 9531)
EASTWOOD, SCANDARIATO & STEINBERG
723 Kennedy Boulevard
North Bergen, New Jersey 07047
(201) 867-0751
(212) 608-4156

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE T. CREHAN, | : CIVIL ACTION NO.: 05 CV 8759 (DLC) |
| Plaintiff, | : |
| v. | : AMENDED COMPLAINT |
| | : WITH JURY DEMAND |
| THE STOP & SHOP SUPERMARKET COMPANY, | : |
| Defendant. | : |
| THE STOP & SHOP SUPERMARKET COMPANY LLC, | : |
| Defendant and Third-Party Plaintiff, | : |
| v. | : |
| UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 1500 WELFARE FUND, and UNITED FOOD AND COMMERCIAL WORKERS NATIONAL HEALTH AND WELFARE FUND, | : |
| Third-Party Defendants. | : |

Plaintiff, residing at 3210 Avenue P, Brooklyn, New York 11234, as and for his amended complaint, alleges:

## NATURE OF THE ACTION

1.      Plaintiff brings this action seeking reinstatement to his previous position of employment with defendant, a promotion for which he was passed over, and to recover from defendant lost wages and benefits, an additional equal amount as liquidated damages, damages for emotional distress/mental anguish, punitive damages, and attorneys' fees and costs based upon defendant's wrongful and malicious retaliatory discrimination and retaliatory discharge against plaintiff in violation of Sections 15(a)(3) and 16(b) of the Fair Labor Standards Act of 1938, Title 29, United States Code, § 215(a)(3) and § 216(b) as hereinafter more fully appears.

2.      This action further seeks damages against defendant, including front pay, based upon defendant's wrongful discharge of plaintiff in breach of the collective bargaining agreement then in force between defendant and Local 1500 of the United Food and Commercial Workers International Union, AFL-CIO (hereinafter "the Union"), plaintiff's exclusive bargaining representative.

3.      This action also seeks damages for alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

## THE PARTIES

4.      Plaintiff is an individual residing at 3210 Avenue P, Brooklyn, New York 11234, who, at times material to this claim, was an employee of the defendant and a member in good standing of the Union.

5.      Defendant is, upon information and belief, a Delaware corporation doing business in New York with its principal place of business at 1385 Hancock Street, Quincy, Massachusetts,

and at all times material to this claim, was and is engaged in an industry substantially affecting interstate commerce.

6. At all times herein set forth, defendant was an employer within the definition of that term contained in Section 3 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 203 and under ERISA, and plaintiff was at all times herein set forth an employee of defendant within the definition of that term under the FLSA and under ERISA.

7. At all times herein set forth, the Union was and is a labor organization and the exclusive bargaining representative of certain employees of defendant, including plaintiff at various times, as set forth in the collective bargaining agreement between the defendant and the Union dated and effective June 23, 2002 (hereinafter "the CBA").

## JURISDICTION

8. Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), 29 U.S.C. § 1132(e), and 28 U.S.C. §1331.

9. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the additional cause of action asserted by plaintiff herein based upon defendant's breach of the CBA.

## VENUE

10. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b)(1) and (c) in that defendant conducts substantial business in this district, has numerous stores in this district, and is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

11. Commencing on or about December 5, 1999 and continuing until March 2, 2005, plaintiff was at all times an employee of the defendant.

12. From approximately September 18, 2000 until October 3, 2001, plaintiff was employed by defendant as a manager-trainee and reserve manager in the defendant's general merchandise department.

13. From approximately October 3, 2001 until March 2, 2005, plaintiff was variously employed by defendant as a full-time clerk, Dairy Department Manager and computer assisted ordering captain at various Stop & Shop stores, and was a dues paying member in good standing of the Union.

14. On or about July 9, 2003, plaintiff filed a consent with the United States District Court for the Southern District of New York joining a collective action then pending against defendant entitled <u>Glen Jacobsen, et al. v. The Stop & Shop Supermarket Company</u>, Docket No. 02 CV 5915 (DLC) (hereinafter "the <u>Jacobsen</u> Action"), seeking overtime compensation from defendant for alleged violations of the Fair Labor Standards Act of 1938 ("FLSA") while plaintiff had been employed by defendant as a manager-trainee and reserve manager in defendants' general merchandise department. The <u>Jacobsen</u> action had been certified as a collective action by Opinion and Order of the Court dated May 14 2003. The Opinion and Order is reported at 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 14, 2003).

15. On or about January 1, 2004, without any admission of liability by defendant, defendant and plaintiff settled plaintiff's claim for overtime compensation asserted in the <u>Jacobsen</u> action, with defendant paying plaintiff in or about June 2004 the amount of $4,661.35, representing gross wages for overtime, and defendant paying plaintiff's attorney in the <u>Jacobsen</u> Action $2,486.05 in attorneys' fees and costs.

16. Shortly thereafter, and in retaliation for joining the <u>Jacobsen</u> action seeking overtime pay against defendant, receiving the settlement proceeds from the <u>Jacobsen</u> action, and

4

with no valid commercial reason, defendant discriminated against plaintiff by transferring plaintiff from Stop & Shop supermarket no. 505 on Avenue Y in Brooklyn, New York to a different work location, store no. 506, in a dangerous neighborhood in Flatbush, Brooklyn, where plaintiff was, upon information and belief, one of only two Caucasians out of a total workforce of approximately 150, by wrongfully passing plaintiff over for a promotion, by assigning plaintiff to work tasks that were not typical of his position, and by otherwise discriminating against plaintiff in the terms, conditions, and circumstances of his employment with defendant.

17.     Defendant transferred plaintiff approximately four (4) days after Stop & Shop improperly forwarded directly to the Avenue Y supermarket plaintiff's settlement proceeds from the <u>Jacobsen</u> Action.  Under the terms of the settlement of the <u>Jacobsen</u> Action, defendant was to forward plaintiff's settlement proceeds to plaintiff's attorneys in the <u>Jacobsen</u> Action, not to plaintiff's store for distribution to plaintiff.

18.     Immediately after receipt of the settlement proceeds, defendant transferred plaintiff from Avenue Y store no. 505 in Brooklyn, which was a high volume, successful store, where plaintiff was in line for a promotion to Grocery Department Manager, to defendant's Flatbush store no. 506, which was a low volume, unsuccessful store, where plaintiff had no specific work position.

19.     Defendant transferred plaintiff from store no. 505 to store no. 506 during the period that plaintiff had previously requested for vacation, but which request was denied by the store manager at store no. 505 because other managers at store no. 505 were not working that week and, therefore, according to the store manager of store no. 505, plaintiff was indispensable and had to work that week in store no. 505.

20. Defendant transferred plaintiff and engaged in other discriminatory conduct against plaintiff in order to punish and discriminate against plaintiff for joining the Jacobsen Action against defendant and in the hopes that plaintiff would resign from defendant's employ.

21. Defendant has engaged in a similar pattern of retaliatory conduct whereby defendant transfers employees to other work locations and assigns such employees work tasks that are less desirable in order to punish and discriminate against such employees and to pressure those employees to resign.

22. Despite defendant's retaliatory, vindictive, and discriminatory treatment of plaintiff, plaintiff continued to properly perform all of the duties and responsibilities of his job at his new location.

23. In consequence of plaintiff's refusal to resign his employment with defendant, defendant thereafter wrongfully and improperly suspended plaintiff on or about March 2, 2005, and thereafter wrongfully and improperly dismissed the plaintiff from his position with defendant sometime in April 2005 without just cause and in breach of the CBA.

24. Defendant claimed that plaintiff's termination was for just cause because plaintiff discarded unsaleable merchandise in the trash.  Defendant's claim, however, was clearly pretextual as plaintiff was ordered by store management to discard the unsaleable merchandise.

25. Plaintiff grieved his discharge to the Union and to the defendant in accordance with the CBA.

26. The parties met in an effort to adjust the grievance, but the grievance was arbitrarily, capriciously and wrongfully rejected by defendant.

27. Thereafter the defendant failed to comply with the balance of the grievance procedures set forth in the CBA in connection with plaintiff's grievance and in or about April 2005 plaintiff was wrongfully and improperly discharged by defendant without just cause.

28. Plaintiff never received any notice of his rights under COBRA and ERISA.

29. Plaintiff filed a claim for unemployment insurance benefits with the New York Department of Labor.

30. Defendant disputed the claim in order to discriminate against plaintiff for joining the Jacobsen Action.

31. A hearing was held before the Unemployment Insurance Appeal Board at which time testimony was taken from both plaintiff and defendant.

32. On or about July 27, 2005, the Administrative Law Judge concluded that plaintiff did not engage in misconduct as alleged by defendant, and that his discharge was therefore without just cause and wrongful.

FIRST CLAIM FOR RELIEF AGAINST DEFENDANT:
VIOLATION OF THE FLSA

33. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through and including 32 hereof with the same force and effect as if hereinafter set forth at length.

34. In consequence of plaintiff's participation in the Jacobsen Action seeking overtime compensation from defendant for defendant's violations of the FLSA, defendant maliciously discharged plaintiff and otherwise discriminated against plaintiff in the terms, conditions and circumstances of plaintiff's employment with defendant in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

35.     Plaintiff seeks reinstatement, promotion, and the payment of lost wages and benefits, as well as an additional equal amount as liquidated damages pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

36.     By reason of defendant's wrongful and malicious discrimination and discharge of plaintiff, plaintiff suffered and continues to suffer severe emotional distress and mental anguish for which defendant is liable.

37.     By reason of defendant's wrongful discharge of plaintiff and other discrimination of plaintiff in the terms, circumstances and conditions of plaintiff's employment with defendant, it has been necessary for plaintiff to employ attorneys to institute and prosecute this cause.  Said attorneys are now appearing herein on behalf of plaintiff and reasonable attorneys' fees and other costs and expenditures have been and will be further incurred in the interest of the action which defendant should be responsible for.

38.     By virtue of the foregoing, plaintiff is entitled under the FLSA to:

(a)     reinstatement to employment with defendant;

(b)     promotion to a position superior to that which plaintiff was employed at the time of his wrongful discharge for which plaintiff was wrongfully passed over;

(c)     lost wages since March 2, 2005, including reasonable overtime wages that plaintiff typically earned while employed by defendant;

(d)     lost retirement and pension benefits since March 2, 2005;

(e)     lost seniority time that would have accrued since March 2, 2005;

(f)     reimbursement for lost health and welfare benefits since March 2, 2005;

(g)     lost sick and vacation days that would have accrued since March 2, 2005;

8

   (h) liquidated damages in an amount equal to the amount of lost wages and benefits plus reasonable overtime wages that plaintiff typically earned while employed by defendant;

   (i) interest on the wages and benefits plaintiff lost, including interest on the lost overtime wages that plaintiff typically earned while employed by defendant, from the dates such wages should have been paid;

   (j) reasonable attorneys' fees, costs and expenditures;

   (k) damages for emotional distress/mental anguish;

   (l) punitive damages; and

   (m) such other and further relief as the Court deems just and proper.

SECOND CLAIM FOR RELIEF AGAINST DEFENDANT:<br><u>BREACH OF THE CBA</u>

39. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through and including 38 hereof with the same force and effect as if hereinafter set forth at length.

40. In consequence of plaintiff's participation in the <u>Jacobsen</u> Action seeking overtime compensation from defendant for defendant's violations of the FLSA, defendant wrongfully suspended and then discharged plaintiff and otherwise discriminated against plaintiff in the terms, conditions and circumstances of plaintiff's employment with defendant without just cause in breach of the CBA.

41. Thereafter, plaintiff sought to grieve said suspension, discharge and discriminatory treatment in accordance with the terms and conditions of the written CBA, but defendant failed to comply with the grievance procedures set forth in the CBA.

42. By virtue of the foregoing, defendant breached the written CBA with plaintiff and plaintiff is entitled to:

    (a)    lost back pay since March 2, 2005, including reasonable overtime wages that plaintiff typically earned while employed by defendant;

    (b)    lost retirement and pension benefits since March 2, 2005;

    (c)    lost seniority time that would have accrued since March 2, 2005;

    (d)    lost sick and vacation days that would have accrued since March 2, 2005;

    (e)    reimbursement for lost health and welfare benefits since March 2, 2005;

    (f)    interest on the wages and benefits lost, including interest on the lost overtime wages that plaintiff typically earned while employed by defendant, from the date such wages should have been paid;

    (g)    lost front pay;

    (h)    reasonable attorneys' fees, costs and expenditures; and

    (i)    such other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT AND THIRD-PARTY DEFENDANTS: <u>VIOLATIONS OF ERISA</u>

43. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through and including 42 hereof with the same force and effect as if hereinafter set forth at length.

44. As an employee of Stop & Shop and a member of the Union at the time he was terminated by defendant, plaintiff was a participant in a health and welfare benefit plan provided

by third-party defendants within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA").

45. Upon information and belief, the health care benefit plan provided by third-party defendants is administered by a Board of Trustees, members of which are representatives of Stop & Shop.

46. Plaintiff's termination was a qualifying event under 29 U.S.C.S. § 1163 of ERISA requiring that Stop & Shop notify the health and welfare benefit plan administrator that plaintiff was terminated within 30 days of such termination pursuant to 29 U.S.C.S. § 1166 of ERISA so that plaintiff could be apprised of his rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") within 14 days thereafter by the third-party defendants, and/or Stop & Shop was required to notify plaintiff of his rights under COBRA.

47. Defendant and third-party defendants failed to provide such notifications as required under ERISA and are thus liable to plaintiff under 29 U.S.C.S. § 1132 of ERISA in the amount of $100 per day for each day subsequent to 30 days and/or 44 days after plaintiff's termination up to and including the present and/or eighteen (18) months after termination, whichever is greater.

48. Plaintiff should be awarded attorneys' fees and costs against defendant and/or third-party defendants under 29 U.S.C.S. § 1132 of ERISA for defendant's and/or third-party defendants' violations of ERISA.

49. Plaintiff never received notice of his rights under COBRA.

WHEREFORE, plaintiff prays for judgment against defendant and/or third-party defendants as follows:

    (1)    Reinstatement to employment with defendant;

  (2)  Promotion by defendant to the position that plaintiff was passed over for;

  (3)  Awarding plaintiff money damages against defendant for lost wages and lost benefits;

  (4)  Awarding plaintiff lost seniority time, and sick and vacation days;

  (5)  Awarding plaintiff front pay against defendant;

  (6)  Granting plaintiff the costs of suit and reasonable attorneys' fees;

  (7)  Awarding plaintiff damages against defendant for emotional distress/mental anguish in an amount to be determined at trial but which should be in excess of Five Hundred Thousand Dollars ($500,000.00);

  (8)  Awarding plaintiff punitive damages against defendant for malicious and intentional misconduct in an amount to be determined at trial but which should be in excess of Five Million Dollars ($5,000,000.00);

  (9)  Awarding plaintiff $100 per day against defendant and/or third-party defendants for each day subsequent to 30 days and/or 44 after his termination by defendant up until the present and/or eighteen (18) months after his termination, whichever is greater for violations of ERISA;

  (10)  Awarding plaintiff reasonable attorneys' fees and costs of suit for defendant's and third-party defendants' violations of ERISA; and

  (11)  Granting plaintiff such other and further relief as the Court deems just and proper.

JURY DEMAND

The plaintiff demands trial by jury on all claims for relief.

Dated:  North Bergen, New Jersey          EASTWOOD, SCANDARIATO & STEINBERG
April 20, 2006

By: _____/s/_____
Eric Steinberg (ES 9531)
723 Kennedy Boulevard
North Bergen, New Jersey 07047
(201) 867-0751

1270 Avenue of the Americas
31st Floor
New York, New York 10020
(212) 608-4156

Attorneys for Plaintiff

13